**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| FLAVAWORKS ENTERTAINMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JASON A. SCULL, individually, and<br>JOHN DOES #1–#74, identified by<br>Gay-Torrents.org username (see Exhibit D),<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:26-cv-10140<br><br>JURY TRIAL DEMANDED |

## VERIFIED COMPLAINT

Plaintiff FlavaWorks Entertainment, Inc. ("Plaintiff" or "FlavaWorks"), by and through its undersigned counsel, brings this Verified Complaint against Defendant Jason A. Scull and John Does #1–#74, and alleges as follows. The Complaint is verified by the accompanying Verification of Phillip Bleicher.

## NATURE OF THE ACTION

1. This is an action for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq., and for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"). It arises from the same Gay-Torrents.org enterprise at issue in FlavaWorks Entertainment, Inc. v. Deniau, No. 1:26-cv-04857 (N.D. Ill.) (the "Deniau Action"), which is directed at the enterprise's operators and financial recipients. This action is directed at the members who supplied, redistributed, and financed the enterprise.

2. Gay-Torrents.org (the "Site" or the "enterprise") was a private membership website that, for more than sixteen years, existed to distribute copyrighted audiovisual works, primarily

adult-entertainment works — including Plaintiff's works — without authorization. Membership was the gateway to everything the Site offered. A person could enter only by invitation from an existing member or, during the periods when the operators chose to open it, by paying for access; only a registered member could log in, browse the Site's catalog of infringing works, obtain them, supply new ones, or participate in its forums.

3. The Site's business was built on fraud. What it sold was access to copyrighted works it had no right to distribute, and every sale was disguised: payments for "VIP" membership and paid access were invoiced and transmitted to banks and payment processors as purchases of "web hosting" or "VPS" services from sham hosting fronts, so that no bank, processor, or copyright owner could see what was actually being bought and sold. The Site told its members so on its own payment pages. Those disguised payments, in turn, purchased upload credits and sharing-ratio immunity that rewarded members for supplying and sharing more infringing content. The fraud was not incidental to the enterprise; it was how the enterprise was financed, how its membership was recruited, and how its infringing inventory was replenished.

4. Each Defendant was a member of the Site and used his membership to participate in that enterprise — by uploading and downloading Plaintiff's works on the Site and thereby distributing them to other members, and/or by paying for VIP membership through sham "web-hosting" fees that financed the Site, or by some combination of the foregoing. Defendant Scull did both.

5. Following Plaintiff's filing of the Deniau Action and its service of subpoenas on the Site's payment processors and infrastructure providers, the operators of the Site took it offline in early May 2026, and it has remained offline since. Plaintiff's enforcement ended the Site's operation. This action seeks redress against the members whose participation sustained it.

6. Plaintiff asserts direct and contributory copyright infringement, and asserts that the enterprise engaged in a pattern of racketeering activity — criminal copyright infringement (17 U.S.C. § 506; 18 U.S.C. § 2319), wire fraud (18 U.S.C. § 1343), and money laundering (18 U.S.C. §§ 1956–1957) — in whose affairs the Defendants participated and conspired, in violation of 18 U.S.C. § 1962(c) and (d). Every Defendant is properly before this Court: RICO authorizes nationwide service of process, 18 U.S.C. § 1965, and the Defendants who accessed Plaintiff's websites separately consented to this forum by contract.

## THE PARTIES

### A. Plaintiff

7. Plaintiff FlavaWorks Entertainment, Inc. is an Illinois corporation with its principal place of business at 2705 West Fulton Street, Chicago, Illinois 60612. Plaintiff operates a family of paid subscription websites through which it distributes audiovisual works, primarily adult-entertainment works (the "FlavaWorks Websites"). Phillip Bleicher, Plaintiff's principal, owns the copyrights in the works at issue by written assignment dated July 13, 2022, recorded with the United States Copyright Office on February 14, 2025 at Volume 15032, Document No. 534 (Exhibit A). Plaintiff is the exclusive licensee of those copyrights and the assignee of all accrued claims for their infringement pursuant to an Exclusive Copyright License and Enforcement Agreement between Bleicher, as owner, and Plaintiff, as licensee, and has standing to sue under 17 U.S.C. § 501(b) and 18 U.S.C. § 1964(c). The works at issue (the "Works") are identified, together with their United States Copyright Office registration information, in Exhibit B (Schedule of Works). Each Work was registered before the infringement alleged herein commenced or within three months of its first publication, such that statutory damages and attorney's fees are available under 17 U.S.C. § 412.

**B. Defendant Jason A. Scull**

8. Defendant Jason A. Scull ("Scull") is an individual residing in Arlington, Virginia. Scull is named in his individual capacity.

9. Scull was a paying subscriber to the FlavaWorks Websites. He registered for a paid membership on or about March 30, 2020, and through July 2021 he accessed and downloaded Plaintiff's Works more than two hundred (200) times through that paid account. Scull's downloads from the FlavaWorks Websites were lawful when he made them: he paid for access, and his membership licensed him to view and download the Works for his own personal, non-commercial use, and for no other purpose.

10. As a condition of joining and paying for the FlavaWorks Websites, Scull agreed to the FlavaWorks Terms and Conditions (the "Terms"), described in Paragraph 21 below. The Terms prohibit the reproduction, redistribution, or public dissemination of any content obtained from the FlavaWorks Websites, and designate the United States District Court for the Northern District of Illinois as the exclusive forum for any dispute arising out of or relating to the FlavaWorks Websites or his use of them.

11. At the moment each Work was delivered to Scull through his paid account, Plaintiff's content-delivery system embedded a unique forensic identifier into the copy delivered to him, tying that specific copy to Scull's account and to that download session. No other copy of any Work bears the identifiers embedded in the copies delivered to Scull.

12. Scull then posted, or caused to be posted, the Works he had downloaded from the FlavaWorks Websites on Gay-Torrents.org, where they were made available to the Site's membership for download and redistribution. Plaintiff knows this because copies of Plaintiff's Works bearing the forensic identifiers embedded in the copies delivered to Scull were located on the Site, available for download and being distributed among members, in each of 2022, 2023,

2024, and 2025. Although the Site did not publicly attribute uploads to identified users, the presence of Scull's forensic identifiers in the copies circulating on the Site establishes that the copies Scull obtained from Plaintiff are the copies distributed on the Site, and that Scull is the source from which they were derived.

13. Scull's infringement is continuing and within the limitations period. Each time a copy bearing Scull's identifiers was made available to and obtained by another member of the Site — including in each year from 2022 through 2025 — a further act of unauthorized distribution occurred, and each such act gave rise to a separate, independently accruing claim under 17 U.S.C. § 507(b). *Petrella v. Metro-Goldwyn-Mayer, Inc.,* 572 U.S. 663, 671 (2014). In the alternative, Plaintiff's claims accrued when Plaintiff discovered, or reasonably could have discovered, that the copies circulating on the Site were the copies delivered to Scull, *Chicago Building Design, P.C. v. Mongolian House, Inc.,* 770 F.3d 610, 614 (7th Cir. 2014), and Plaintiff is entitled to recover damages for all acts of infringement within a timely claim without regard to a three-year look-back. *Warner Chappell Music, Inc. v. Nealy,* 601 U.S. 366, 370 (2024). The Works traced to Scull are among the Works identified in Exhibit B.

14. Scull was not a casual participant. He is a high-volume uploader and downloader on the Site, and he paid for VIP membership on the Site — payments invoiced and transmitted as sham "web-hosting" fees through the disguised channels described below, in amounts to be established through discovery — that financed the Site's operations. His sustained uploading supplied the Site's infringing inventory and fed the sharing-ratio and upload-credit economy by which the Site induced other members to upload and to pay. Plaintiff's investigation of Scull's activity on the Site is ongoing, and Plaintiff will supplement these allegations as additional records are obtained through discovery.

15. In December 2022, after receiving Plaintiff's cease-and-desist demand, Scull acknowledged in writing that he had paid for and downloaded Plaintiff's content, and refused to resolve the matter. He did not stop. Scull continued to participate in the Site after that demand: copies bearing his identifiers remained in circulation and continued to be distributed on the Site through 2023, 2024, and 2025, and Scull continued to upload to and download from the Site after December 2022. Scull's continued infringement after receiving and acknowledging Plaintiff's demand establishes the willfulness of his infringement.

**C. Defendants John Does #1–#74**

16. Defendants John Does #1 through #74 (the "Member Defendants") are seventy-four (74) individuals, each of whom registered for and held a membership account on Gay-Torrents.org. Each Member Defendant's Gay-Torrents.org username and the user-identification number the Site assigned to his account are set forth in Exhibit D (Schedule of Member Defendants), and each is identified in this pleading by that username. Plaintiff has identified each Member Defendant's Site account and registered email address through its own records and investigation; Plaintiff will move to substitute each Member Defendant's true legal name as it is confirmed through the expedited third-party discovery described below. Upon information and belief, each Member Defendant is an adult individual residing in the United States. Each is sued in his individual capacity.

17. Each Member Defendant was a member of the Site and, through that membership, participated in the enterprise. Specifically, and on information and belief based on the Site's own per-member records and on Plaintiff's investigation, each Member Defendant did one or both of the following: (a) uploaded and/or downloaded one or more of Plaintiff's Works on the Site — and, because the Site's sharing system required every member who downloaded a work to

redistribute it to other members, each such Defendant both obtained and distributed the Works (together with Scull, the "Uploader/Downloader Defendants"); and/or (b) made one or more VIP payments to the Site — each invoiced and transmitted as a sham "web-hosting" fee through the disguised channels described below — that financed the Site's operations. Plaintiff's records identify, for each Member Defendant, the specific Work or Works of Plaintiff involved and the corresponding Site activity and payment events, which Plaintiff will particularize upon substitution of his true name.

18. Certain of the Member Defendants also visited and accessed the FlavaWorks Websites under the same usernames they used on Gay-Torrents.org. Plaintiff's server records reflect those visits by username, date, and IP address. Although those Member Defendants did not purchase paid memberships, the FlavaWorks Websites do not display any video or photographic content to a visitor until he has (i) passed an age-verification gate affirming that he is at least eighteen years old, (ii) scrolled through the full text of the Terms described in Paragraph 21 below, and (iii) clicked a checkbox stating that he has read and agrees to the Terms. No content is reachable without completing those three steps. Each such Member Defendant completed them and thereby affirmatively assented to the Terms, including the forum-selection and consent-to-jurisdiction provision described in Paragraph 21 — an assent of the kind Illinois law and this Circuit enforce where, as here, the agreement is presented in a scroll box beside an unambiguous "I agree" control. *Cf. Sgouros v. TransUnion Corp.,* 817 F.3d 1029, 1034–36 (7th Cir. 2016) (declining to enforce terms where the assent button did not refer to them, while recognizing that an agreement clearly presented beside an unambiguous assent control is enforceable). Plaintiff's records identify those Member Defendants, and Plaintiff will particularize the date and IP address of each such Defendant's assent upon substitution of his true name.

**D. The Enterprise and Its Operators (Non-Parties)**

19. The individual known as "TheMan," the administrators of Gay-Torrents.org, and the entities and individuals that operated its payment channels (BYZONA LTD, Orlin Tsekov, and Evgenii Nazarov) constituted and operated the enterprise. They are defendants in the Deniau Action, where their true identities are being determined through discovery. They are named here as the enterprise and as co-conspirators but are not defendants in this action, which preserves the distinctness of the RICO "person" from the RICO "enterprise" and avoids naming the same individuals in two actions.

## JURISDICTION AND VENUE

20. Subject-Matter Jurisdiction. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (copyright), and 18 U.S.C. § 1964(c) (civil RICO).

21. The FlavaWorks Terms and Conditions. Every FlavaWorks Website requires each user to agree to the FlavaWorks Terms and Conditions (the "Terms") as a condition of joining the site and of paying for membership, and requires every visitor who accesses free content to pass an age-verification gate and affirmatively accept the Terms before any video or photographic content is displayed. The Terms contain a governing-law, forum-selection, and consent-to-jurisdiction clause providing that any dispute, claim, or controversy arising out of or relating to the Terms, the FlavaWorks Websites, or the user's use of them — whether sounding in contract, tort, statute, or otherwise — shall be brought exclusively in the United States District Court for the Northern District of Illinois, and by which the user expressly consents to the personal jurisdiction of this Court and waives any objection to venue, including any claim of forum non conveniens. A true and correct copy of the Terms is attached as Exhibit E.

22. Personal Jurisdiction — Consent. Defendant Scull agreed to the Terms when he joined and paid for the FlavaWorks Websites on or about March 30, 2020. Each Member Defendant who visited and accessed the FlavaWorks Websites likewise agreed to the Terms. By those agreements, each such Defendant expressly consented to the personal jurisdiction and venue of this Court with respect to the claims asserted here, which arise directly out of his access to and use of Plaintiff's content. Courts in this District have enforced the Terms' forum-selection clause against FlavaWorks users who redistributed its content. *Flava Works, Inc. v. Rossi,* No. 12 C 1885, 2013 WL 1337326 (N.D. Ill. Mar. 29, 2013) (Lefkow, J.) (denying Rule 12(b)(2) motion); *FlavaWorks Entm't, Inc. v. Lewitzky,* No. 1:24-cv-09725 (N.D. Ill. July 15, 2026) (Valderrama, J.) (same).

23. Personal Jurisdiction — Anchor Defendant Under 18 U.S.C. § 1965(a). Independently of RICO's nationwide-service provisions, Defendant Scull is subject to this Court's personal jurisdiction under 18 U.S.C. § 1965(a) because he "transacts his affairs" in this District. On or about March 30, 2020, Scull entered into a paid membership contract with Plaintiff, an Illinois corporation headquartered in Chicago; over the following sixteen months he accessed Plaintiff's Chicago-based subscription service more than two hundred times, each time retrieving Plaintiff's Works from Plaintiff's content-delivery system; and the infringement alleged here consists of his redistribution of the very copies Plaintiff delivered to him under that contract. As a condition of that contract, Scull affirmatively accepted the Terms (Exhibit E) by checking the box confirming that he had read and agreed to them, including the provision that any dispute arising out of the FlavaWorks Websites or his use of them be brought exclusively in this Court, his express consent to the personal jurisdiction of this Court, and his waiver of any objection to venue. Scull is therefore a defendant over whom this Court has personal jurisdiction under § 1965(a) and under

the Due Process Clause on traditional minimum-contacts principles, and the remaining Defendants — co-conspirators in the same enterprise and the same pattern of racketeering activity — are properly brought before this Court under § 1965(b) because the ends of justice so require, as set forth in Paragraph 24.

24. Personal Jurisdiction — Nationwide Service Under RICO. RICO authorizes nationwide service of process. 18 U.S.C. § 1965(b), (d). The Seventh Circuit has held that § 1965(b) "creates personal jurisdiction by authorizing service," that there is "no constitutional obstacle to nationwide service of process in the federal courts in federal-question cases," and that the provision "authorizes nationwide service so that at least one court will have jurisdiction over everyone connected with any RICO enterprise." *Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671–72 (7th Cir. 1987); *see also Fitzsimmons v. Barton,* 589 F.2d 330, 332–34 (7th Cir. 1979). Under the Fifth Amendment the inquiry is whether the defendant has minimum contacts with the United States as a whole; each Defendant resides in, and directed his relevant conduct within, the United States. The ends of justice require that every Defendant be brought before this Court: this District is where the victim of the enterprise is located and was injured; the enterprise's operators and financial recipients are already before this Court in the Deniau Action; Defendant Scull is subject to this Court's jurisdiction under § 1965(a) and, like each Defendant who accessed the FlavaWorks Websites, consented to this forum by contract; and the remaining Defendants are their co-conspirators in the affairs of the same enterprise, engaged in the same pattern of racketeering activity. One enterprise and one pattern should be adjudicated in one court. Each Defendant is also subject to service under § 1965(d). A Defendant's residence in a State other than Illinois is, on the RICO claims, legally irrelevant to this Court's jurisdiction over him.

25. Pendent Personal Jurisdiction. Because the Court has personal jurisdiction over each Defendant on the RICO claims, it has pendent personal jurisdiction over the copyright claims against the same Defendant, which arise from a common nucleus of operative fact.

26. Per-Defendant Jurisdictional Allegations. The basis for this Court's personal jurisdiction over each Defendant is set forth above. Exhibit D identifies each Member Defendant by username and Site user-identification number; Plaintiff's records further identify, for each Member Defendant, the facts supporting his residence in the United States, whether he accessed the FlavaWorks Websites and thereby consented to this forum under the Terms, and his role in the enterprise as an Uploader/Downloader Defendant, a Funder Defendant, or both, and Plaintiff will particularize those facts defendant-by-defendant upon substitution of his true name. Defendant Scull is subject to this Court's jurisdiction on every basis set forth above.

27. Venue. Venue is proper as to each Defendant. Under 28 U.S.C. § 1400(a), venue in a copyright action lies in the district in which the defendant "may be found," that is, the district in which the defendant is subject to personal jurisdiction. The consenting Defendants may be found in this District by virtue of their contractual consent, and each remaining Defendant may be found in this District by virtue of RICO's nationwide-service provision, 18 U.S.C. § 1965. Venue over the RICO claims is proper under 18 U.S.C. § 1965(a) as to Defendant Scull, who transacts his affairs in this District, and as to any other Defendant who resides, is found, or transacts his affairs in this District, and as to all Defendants under § 1965(b). Venue is also proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims, including Plaintiff's injury, occurred in this District.

## JOINDER

28. Joinder of the Defendants is proper under Federal Rule of Civil Procedure 20(a)(2). Plaintiff's claims against all Defendants arise out of the same series of transactions and occurrences: each Defendant's membership in, use of, and participation in the single Gay-Torrents.org enterprise, and the enterprise's coordinated, membership-driven, fraudulently financed distribution of Plaintiff's Works. The Defendants are not strangers who happened to use the same software. They were members of one private website, admitted through one invitation-or-payment system, bound by one set of membership rules, participating in one sharing-ratio and paid-VIP economy financed through one set of disguised payment channels, drawing on and contributing to one common catalog of Plaintiff's Works, under the direction of one group of operators. The claims present questions of law and fact common to all Defendants concerning that enterprise, its structure, its financing, its pattern of racketeering activity, and the Works distributed through it. Courts in this District have held that defendants who independently participate in a common scheme of distributing the same copyrighted works through a shared file-sharing system are properly joined under Rule 20(a)(2), because Rule 20 permits joinder of independent actors whose conduct forms part of the same "series of transactions or occurrences" and does not require a direct transaction between every defendant. *Malibu Media, LLC v. John Does 1-6,* 291 F.R.D. 191, 200–01 (N.D. Ill. 2013) (applying *United States v. Mississippi,* 380 U.S. 128, 142–43 (1965)); *Bicycle Peddler, LLC v. Does 1-12,* 295 F.R.D. 274, 277–78 (N.D. Ill. 2013) (joinder of non-contemporaneous participants appropriate; "the law governing joint ventures and conspiracies … clearly permits plaintiffs to proceed against groups of defendants"); *First Time Videos, LLC v. Does 1-500,* 276 F.R.D. 241, 252–53 (N.D. Ill. 2011); *First Time Videos, LLC v. Does 1-76,* 276 F.R.D. 254, 257 (N.D. Ill. 2011). The case for joinder here is stronger than in those cases: the Defendants are not merely participants in a swarm sharing one file, but members of a single private

enterprise and, as alleged in Count IV, co-conspirators in a single RICO conspiracy, against whom Plaintiff asserts a right to relief jointly and severally.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Works and the FlavaWorks Websites

29. Plaintiff distributes hundreds of registered audiovisual works, primarily adult-entertainment works, through the FlavaWorks Websites. Access to the Works requires agreement to the Terms and, for full content, a paid membership. The Terms prohibit reproduction and redistribution of any content. Plaintiff embeds a unique forensic identifier in each file it delivers to a member, enabling Plaintiff to trace any copy that later surfaces elsewhere — including on Gay-Torrents.org — back to the member account from which it originated.

### B. Gay-Torrents.org

30. Gay-Torrents.org operated from 2009 until early May 2026 and registered more than 146,000 members. It was closed to the public: a person could not view the Site's catalog, obtain anything from it, or supply anything to it without first becoming a member — by invitation from an existing member or, during the periods when the operators opened the Site to paid entry, by paying for access — and agreeing to the Site's membership rules. The Site supplied the catalog, the search and listing functions, the forums, and the coordination infrastructure through which members located one another and exchanged files; the works themselves moved from member to member. The catalog consisted overwhelmingly of copyrighted works, primarily adult works — including Plaintiff's — supplied by members and redistributed among members without authorization.

31. The Site generated revenue through a paid VIP-membership system, priced from €14.95 to €199.95, and, during the periods when the operators opened the Site to paid entry,

through paid access for persons without an invitation. Payment bought upload credits and sharing-ratio immunity, and thereby expressly incentivized the supply and sharing of infringing content. On information and belief, the enterprise generated in excess of €7,000,000 since 2009 across more than 15,000 documented VIP payment events, each invoiced as a sham "web-hosting" fee.

32. Every one of those payments was disguised. The Site routed them through sham "web-hosting" fronts (247host.eu / BYZONA LTD via Skrill, and cloud2max.club / Evgenii Nazarov via PayPal), invoiced them as "VPS" or hosting purchases, and delivered no hosting services of any kind; what the payer received was VIP access to a catalog of infringing works. The purpose and effect was to conceal from banks, regulated payment processors, and copyright owners the true nature of the transactions and the identities of the recipients. The Site advertised this concealment to its members on its own payment pages, assuring them that nothing on their financial statements would reveal any connection to the Site. When a processor terminated one front, the operators opened another under a new name and kept the revenue flowing. The payment channels are summarized in Exhibit C.

33. No member could participate in the Site without knowing what it was. The Site described itself as a venue for the unauthorized distribution of copyrighted works; it told members on its payment pages that their payments would be disguised; it admitted members only by invitation or, when it chose to open its doors, by payment; and its forums had openly discussed, for years, Plaintiff's copyrights and Plaintiff's forensic-identifier technology.

34. Following Plaintiff's April 28, 2026 filing of the Deniau Action and the service of subpoenas on the Site's payment processors and infrastructure providers, the Site's operators took Gay-Torrents.org offline within days, and it has remained offline since — deliberate, unilateral

conduct that evidences consciousness of wrongdoing and supports the willfulness of the infringement carried out through the Site.

**C. The Defendants' Use of Their Memberships**

35. Each Defendant registered for and maintained a membership account on Gay-Torrents.org. Each used that membership to participate in the enterprise in one or both of the following ways: (a) by uploading and/or downloading Plaintiff's Works on the Site, thereby both obtaining and, as the Site's sharing system required, redistributing those Works to other members; and (b) by making VIP payments to the Site, disguised as sham "web-hosting" fees, that financed the Site's operations. Defendant Scull did both. Each Defendant acted with knowledge of the Site's infringing character and of the disguised nature of its payment system, as set forth in Paragraph 33.

**THE RICO ENTERPRISE AND PATTERN OF RACKETEERING ACTIVITY**

36. Gay-Torrents.org is an association-in-fact enterprise under 18 U.S.C. § 1961(4) — an ongoing organization with a common purpose (profiting from the unauthorized distribution of copyrighted works), relationships among those associated with it, and longevity sufficient to pursue its purpose, within the meaning of *Boyle v. United States,* 556 U.S. 938, 946 (2009). The Defendants are "persons" distinct from the enterprise who participated in its affairs.

37. The enterprise engaged in a pattern of racketeering activity comprising related, continuous predicate acts from 2009 to 2026: criminal copyright infringement (17 U.S.C. § 506; 18 U.S.C. § 2319, an enumerated RICO predicate under 18 U.S.C. § 1961(1)(B)); wire fraud (18 U.S.C. § 1343, through the disguised "web-hosting" payment scheme by which every sale of access to infringing works was misrepresented to banks and payment processors); and money laundering (18 U.S.C. §§ 1956–1957, through the routing of infringement proceeds from United

States payers to successive shell merchant accounts held abroad, 18 U.S.C. § 1956(a)(2)). The pattern satisfies the relationship and continuity requirements of *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239 (1989).

38. Criminal copyright infringement — the Uploader/Downloader Defendants' predicate. Each Uploader/Downloader Defendant, including Scull, willfully reproduced and distributed Plaintiff's Works. Each did so for purposes of commercial advantage or private financial gain within the meaning of 17 U.S.C. § 506(a)(1)(A): the Site operated a sharing-ratio and upload-credit economy in which supplying and sharing infringing works earned the member download credit, ratio immunity, and elevated membership status of measurable value — including the receipt of other copyrighted works, which is itself "financial gain" under 17 U.S.C. § 101 — and each such Defendant obtained those benefits in exchange for supplying infringing content. In the alternative, each such Defendant reproduced or distributed, during a 180-day period, one or more copies of one or more copyrighted works with a total retail value exceeding $1,000, within the meaning of 17 U.S.C. § 506(a)(1)(B). Each such act constitutes criminal copyright infringement under 17 U.S.C. § 506 and 18 U.S.C. § 2319.

39. Wire fraud — the Funder Defendants' predicate. Defendant Scull and each Member Defendant who paid a sham "web-hosting" fee for VIP membership (together, the "Funder Defendants") did not merely purchase something. Each one, to pay the Site, navigated from the Site's payment page to a website holding itself out as a web-hosting company (247host.eu or cloud2max.club), placed an order for a "VPS" or hosting plan that he knew he was not buying and that did not exist, and authorized a charge to his own card issuer or payment account described as a hosting purchase — knowing, because the Site's payment page told him so in terms, that the description was false and that its purpose was to prevent his bank, the processor, and copyright

owners from seeing what was actually being bought. The charge then traveled by wire, under that false description, from the Funder Defendant's United States card issuer or payment account, through the processors' United States-facing checkout systems, to merchant accounts held outside the United States — BYZONA LTD's account with Skrill Limited, a United Kingdom payment institution in the Paysafe group, and Evgenii Nazarov's account with PayPal (Europe) S.à r.l. et Cie, S.C.A., a Luxembourg credit institution — each transmission crossing state and national borders in interstate and foreign commerce. Each Funder Defendant thereby adopted the enterprise's false representation as his own and caused it to be transmitted by wire in interstate or foreign commerce in furtherance of the scheme to defraud, in violation of 18 U.S.C. § 1343. The false description was material to the processors: it induced Skrill and PayPal to accept, process, and transmit funds across national borders for a transaction that each prohibits under its acceptable-use policies and would not have processed had its true nature been disclosed, and the wire-fraud statute requires no showing that the deceived party suffered economic loss. *Kousisis v. United States,* 605 U.S. 114 (2025). Under 18 U.S.C. § 1962(d) a defendant need not himself commit a predicate act; it suffices that he knowingly agreed that a member of the conspiracy would. *Salinas v. United States,* 522 U.S. 52, 63–65 (1997). Each Funder Defendant's knowing, deliberate use of a payment channel he understood to be disguised for the purpose of concealment is that agreement, and each payment is an overt act in furtherance of it. The mechanics of the scheme — the sham hosting fronts, the invoices, the descriptors transmitted to card issuers, and the recipients — are documented transaction-by-transaction in Exhibit C. The date, amount, and channel of each Funder Defendant's individual payments are recorded in the enterprise's own transaction records and in the records of Skrill Limited and PayPal (Europe) S.à r.l. et Cie, S.C.A., which are within the knowledge of the Defendants and the enterprise, which those institutions' United States affiliates

have stated they do not hold, and which are the subject of subpoenas issued in the Deniau Action; Plaintiff pleads them with the particularity presently available to it and will supplement upon receipt of those records. *See Corley v. Rosewood Care Ctr., Inc.,* 142 F.3d 1041, 1051 (7th Cir. 1998) (Rule 9(b) particularity is relaxed where the details of a fraud on third parties are in the defendants' hands).

40. Plaintiff has been injured in its business and property, within the meaning of 18 U.S.C. § 1964(c), through the loss of licensing and subscription revenue and the diminution in the value of its exclusive rights, proximately caused by the Defendants' predicate acts of criminal copyright infringement, which directly harm the holder of the infringed rights, and by their financing and supply of the enterprise that carried out that infringement.

## COUNT I

**Direct Copyright Infringement — 17 U.S.C. §§ 106, 501**
(Against the Uploader/Downloader Defendants)

41. Plaintiff incorporates the preceding paragraphs. Without authorization, each such Defendant reproduced Plaintiff's Works (17 U.S.C. § 106(1)) and distributed them to other members of the Site (17 U.S.C. § 106(3)). Scull, having lawfully downloaded the Works from the FlavaWorks Websites, posted or caused them to be posted on the Site, where they were reproduced and distributed among members; the other such Defendants obtained the Works through the Site and, by operation of the Site's sharing system, redistributed them to other members. Notwithstanding the Site's anonymization of uploader identities, the copies distributed on the Site bear the forensic identifiers Plaintiff embedded in the copies delivered to its members, establishing the source of the infringing copies. Each act of reproduction and distribution accrued separately under 17 U.S.C. § 507(b), and acts of distribution occurred within the three years preceding the

filing of this Complaint; in the alternative, Plaintiff's claims are timely under the discovery rule. The infringement was willful.

42. Plaintiff is entitled, at its election under 17 U.S.C. § 504(c), to statutory damages of up to $150,000 per Work for willful infringement, or to actual damages and profits under § 504(b), together with costs and attorney's fees under § 505, and to injunctive and impoundment relief under §§ 502–503.

**COUNT II**

**Contributory Copyright Infringement**
(Against All Defendants)

43. Plaintiff incorporates the preceding paragraphs. Each Defendant, with knowledge of the infringing activity, materially contributed to it — by uploading and downloading infringing copies that other members reproduced and distributed, and/or by financing the enterprise through VIP payments disguised as sham "web-hosting" fees that sustained its infringement-reward economy. The Site's paid VIP-credit and ratio system was designed for and tailored to infringement within the meaning of *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936–37 (2005). Plaintiff is entitled to damages, costs, attorney's fees, and injunctive relief.

**COUNT III**

**Violation of RICO — 18 U.S.C. § 1962(c)**
(Against the Uploader/Downloader Defendants)

44. Plaintiff incorporates the preceding paragraphs. Gay-Torrents.org is an enterprise engaged in and affecting interstate and foreign commerce. The Uploader/Downloader Defendants were associated with the enterprise and participated in the conduct of its affairs through a pattern of racketeering activity. Although these Defendants did not themselves direct the enterprise, they

were not outsiders to it: acting under the direction of the enterprise's operators and within the sharing-ratio and upload-credit system those operators designed, each Uploader/Downloader Defendant knowingly supplied and shared the infringing inventory that was the enterprise's reason for being, thereby participating in the operation or management of the enterprise as a lower-rung participant within the meaning of *Reves v. Ernst & Young,* 507 U.S. 170, 184 (1993). As a direct and proximate result, Plaintiff is entitled to threefold its damages, costs, and attorney's fees under 18 U.S.C. § 1964(c), and to injunctive relief under § 1964(a).

**COUNT IV**

**Conspiracy to Violate RICO — 18 U.S.C. § 1962(d)**
(Against All Defendants)

45. Plaintiff incorporates the preceding paragraphs. Each Defendant knowingly agreed to further the affairs of the enterprise and adopted the goal of facilitating its pattern of racketeering activity. Each Uploader/Downloader Defendant so agreed by uploading and downloading infringing content in exchange for the enterprise's ratio and upload-credit rewards; each Funder Defendant so agreed by paying for VIP membership through sham "web-hosting" invoices transmitted through the concealed channels described in Exhibit C, payments that financed the enterprise's operations. Each Defendant so agreed with knowledge of the enterprise's infringing character, established by the facts pleaded above, and agreed that a member of the conspiracy would commit the enterprise's predicate acts. Under *Salinas v. United States,* 522 U.S. 52, 63–65 (1997), and *Brouwer v. Raffensperger, Hughes & Co.,* 199 F.3d 961, 967 (7th Cir. 2000), each Defendant is liable for conspiracy whether or not he himself operated or managed the enterprise, so long as he agreed that a conspirator would commit the predicate acts. The § 1962(d) claim against each Defendant rests independently on his agreement that the enterprise's predicate acts of

criminal copyright infringement would be committed; as to the Funder Defendants, it rests additionally on the wire-fraud predicate described in Paragraph 39. The claim does not depend on the money-laundering predicate. Plaintiff is entitled to threefold damages, costs, and attorney's fees under 18 U.S.C. § 1964(c), and to injunctive relief under § 1964(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against the Defendants and award:

a. On Counts I and II, at Plaintiff's election, statutory damages of up to $150,000 per Work for willful infringement, or actual damages and the infringers' profits;

b. On Counts III and IV, threefold the damages sustained by Plaintiff under 18 U.S.C. § 1964(c);

c. Plaintiff's costs and reasonable attorney's fees under 17 U.S.C. § 505 and 18 U.S.C. § 1964(c);

d. Preliminary and permanent injunctive relief under 17 U.S.C. §§ 502–503 and 18 U.S.C. § 1964(a), and impoundment of infringing copies;

e. An order authorizing expedited third-party discovery to confirm the identities of the Member Defendants, and leave under Rule 15 to substitute their true names and add additional Defendants;

f. Pre- and post-judgment interest as allowed by law; and

g. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: August 21, 2026

Respectfully submitted,

/s/ Corinthia Hicks
Corinthia Hicks, Esq.
Illinois Bar No. 6352965
FlavaWorks Entertainment, Inc.
2705 West Fulton Street,
Chicago, Illinois 60612
Tel: (305) 438-9450
Email: Corinthia@FlavaWorks.com
Counsel for Plaintiff

**VERIFICATION**

I, Phillip Bleicher, hereby declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, as follows:

I, Phillip Bleicher, have read the foregoing Verified Complaint and verify, under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the factual allegations therein are true and correct to the best of my knowledge, except as to matters alleged on information and belief, which I believe to be true.

Executed this 21 day of August, 2026, at Chicago, Illinois.

Phillip Bleicher